**IN THE COURT OF APPEALS OF IOWA**

No. 20-1662
Filed April 14, 2021

**IN THE INTEREST OF L.B.,**
**Minor Child,**

**K.R., Mother,**
         Appellant.
_____

         Appeal from the Iowa District Court for Appanoose County, William Owens,

Associate Juvenile Judge.

         A mother appeals the modification of a dispositional order in a child-in-need-

of-assistance case.  **AFFIRMED.**

         Jonathan Willier, Centerville, for appellant mother.

         Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

         Debra A. George of Griffing & George Law Firm, P.L.C., Centerville,

attorney and guardian ad litem for minor child.

         Considered by May, P.J., and Greer and Schumacher, JJ.

**GREER, Judge.**

A mother appeals the juvenile court's modification of the dispositional order removing her child from her custody during a child-in-need-of-assistance (CINA) case. We conclude the record supports the modification and affirm.

On March 15, 2020, the mother tested positive for methamphetamine and amphetamines when she visited the local emergency room for a tooth problem.[1] Because the mother was the primary caretaker for a child, the results were reported to the Iowa Department of Human Services (DHS). The mother stated the child was staying with the maternal grandmother for the weekend.

During an initial visit by DHS, the mother refused access to her home and would not agree to develop a safety plan. However, the DHS worker was able to observe the mother and child through a screen door, and the worker "didn't get any physical indicators of meth use." The worker observed the child to be "well dressed, clean and healthy" and able to answer the worker's questions. The investigation resulted in a founded child-abuse assessment by DHS, but the child remained in the mother's care.

On July 9, the court adjudicated the child a CINA pursuant to Iowa Code section 232.2(6)(c)(2) and (n) (2020). The child stayed in the mother's custody under the supervision of DHS. After a dispositional hearing in August, the mother appealed the CINA adjudication. We affirmed the adjudication under section

---

[1] The mother contends she did not provide urine for the drug test and that only blood was taken from her. The records submitted only show blood draws, but the doctor who ordered the drug screen testified at the adjudicatory hearing that he ordered a urine drug screen and that a urine test—not a drug screen from the blood—was done. A positive urinalysis test indicates drug use within the past seventy-two hours.

232.2(6)(c)(2) but reversed under paragraph (n). *In re L.B.*, No. 20-1164, 2020 WL 6482087, at *2 (Iowa Ct. App. Nov. 4, 2020) (holding the "record fails to establish the child did not receive adequate care.").

After the adjudication, the mother did better at cooperating with DHS. She obtained a substance-abuse evaluation in September. She encouraged communication between the child and the father. She denied needing assistance or supervision by DHS.

But on October 28, the mother was given a random drug test, and the result came back positive for methamphetamine.[2] After receiving the test results, the DHS worker reached out to the mother to discuss the test on November 5. The mother did not answer her phone, and the worker discovered the child was absent from school. After trying to make contact for approximately seven hours, the DHS worker found the mother and child at their home; the mother refused to comply with the worker's safety plan of having an approved person stay at the house or staying with the child at an approved home. The juvenile court ordered the temporary removal of the child, who was placed with M.L., the mother's former long-term significant other.[3] Later that evening, the mother went to M.L.'s house, broke through the door, and took the child from the home. Law enforcement became involved, and the child was returned to M.L.'s home that night.

On November 19, the court held a review hearing and considered the motion for change of disposition. The mother testified and explained her view of

---

[2] The hair-stat test employed detects methamphetamine use in the ninety days before collection.

[3] M.L. acted as a stepfather for most of the child's life. And he continued to take care of the child sometimes even after his and the mother's relationship ended.

the events of November 5. She denied using methamphetamine in the past three months and indicated she thought an over-the-counter acid reflux medication had caused a false positive.[4] The State submitted evidence from the testing laboratory's director denying the medication would have that effect. The DHS worker testified she had not planned to remove the child after learning of the positive test but felt she had no choice once the mother refused to comply with the safety plan for supervision. The worker also testified to twice seeing a male at the mother's home who "had physical attributes of using methamphetamine."

The juvenile court found clear and convincing evidence that a substantial change of circumstances occurred since the dispositional order confirmed the child should remain in the mother's custody. Additionally, the court found that the purposes of the dispositional order could not reasonably be accomplished and the efforts made to effect the purposes of the order had been unsuccessful and other options were not available. *See* Iowa Code § 232.103(4)(b), (c). The court placed the child in the legal custody of M.L. under the supervision of DHS. The mother appeals.[5]

"We review CINA proceedings de novo." *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). "[T]he State bears the burden of proving its allegations by clear and convincing evidence." *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017). Our primary concern is the child's best interests. *Id.*

---

[4] The mother also testified, "I've also read that the hair types, they are heavily influenced for the drug testing, coarse hair and the color. And I have really thick, coarse hair. That too has a big result in the testing." We give no credence to this unsupported theory.

[5] The father consented to the child's placement with M.L.

The juvenile court may modify a dispositional order if "[t]he purposes of the order cannot reasonably be accomplished" or "[t]he efforts made to effect the purposes of the order have been unsuccessful and other options to effect the purposes of the order are not available." Iowa Code § 232.103(4)(b), (c). Iowa Code section 232.102(4) provides the court should not transfer custody of a child from the child's parent unless "[t]he child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance and an adequate placement is available." *Id.* § 232.102(4)(a)(2). "[T]he court must make a determination that continuation of the child in the child's home would be contrary to the welfare of the child, and shall identify the reasonable efforts that have been made." *Id.* § 232.102(4)(b).

The mother argues her drug use alone does not present sufficient circumstances to warrant removing the child from her care. True, DHS confirmed there was no evidence of overt neglect, harm or abuse of the child from the use of drugs by the mother. But the DHS caseworker explained:

> Quite honestly, I had not planned to ask for [L.B.] to go somewhere else. That's why safety plans were offered to [the mother] in an effort for her to get into treatment. But based on [the mother's] reaction, we had also had (inaudible) that happened in October that made me question (inaudible) as far as lack of response, not being there for visits. Some of—there was a male involved a couple of different times that had physical attributes of using methamphetamine.

Following the positive drug test, the mother refused to implement a safety plan, which would have allowed the child to remain in the mother's custody while being protected from harm through supervision by an approved person. The child was then placed in a familiar home with a father figure. The mother tried to abscond

with the child from the placement's home. Moreover, the mother continues to blame her positive drug screen on an over-the-counter medication that the laboratory director has stated would not affect the result, and she appears to sometimes have a person involved with methamphetamine around her house. We have said a parent's methamphetamine use, in itself, can create a dangerous environment for a child." *See In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020). Child protection statutes "are designed to prevent probable harm to the child and do not require delay until after harm has occurred." *In re L.L.*, 459 N.W.2d 489, 494 (Iowa 1990).

Under these circumstances, we conclude the record supports modification of the dispositional order.

**AFFIRMED.**